**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Tobias G. Payton (R-10454) , Plaintiff, v. Nurse Kenlyn Grote, Johnnie Franklin, Billy Johnson, Frank Shaw, Shawn Bass, C. Markee, Dr. Liping Zhang, Defendants. | ) | Case No. 10 C 3069 Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tobias Payton, an Illinois prisoner confined at Stateville Correctional Center, brought this 42 U.S.C. § 1983 action against Stateville Nurse Kenlyn Grote, Grievance Officer Shawn Bass, former Warden Frank Shaw, Officer C. Markee, Adjustment Committee Hearing Officers Johnnie Franklin and Billy Johnson, and Dr. Liping Zhang. Plaintiff alleges the following: Nurse Grote refused to deliver Plaintiff's prescribed antidepressant medication to him for several months in 2009; when Plaintiff complained, Grote retaliated by charging him with falsely accusing her of refusing to deliver medication; Officers Markee and Sortino (not a Defendant)[1] falsely testified during disciplinary proceedings that, from a tower, they witnessed Grote delivering medications to Plaintiff; Disciplinary Hearing Officers Franklin and Johnson found Plaintiff guilty of the charge, allegedly knowing it was false; and Grievance Officer Bass, Dr. Zhang, and Warden Shaw refused to investigate Plaintiff's grievances about not receiving his medication and being retaliated against.

Currently before the Court are two motions for summary judgment: one from Dr. Zhang and the other from Grote, Shaw, Markee, Franklin, and Johnson. Plaintiff has responded to both

[1] Officer Sortino (initially spelled Zertino by Plaintiff and the parties) was dismissed by Judge Leinenweber after several unsuccessful attempts to serve him and after determining that no current address was available. (Docs. 16, 51, 86, 96, 151, 155, 157).

motions. For the reasons set forth below, the Court grants Dr. Zhang's motion and she is dismissed. The other motion for summary judgment is granted in part and denied in part. Plaintiff may proceed against Nurse Grote and Officer Markee. Defendants Franklin, Johnson, Bass, and Shaw are dismissed.

## I. Legal Standard on Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, courts construe the facts and make all reasonable inferences in favor of the non-movant. *Jajeh*, 678 F.3d at 566. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist*., 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

Pursuant to Northern District of Illinois Local Rule 56.1, "a district court is entitled to decide [a summary judgment] motion based on the factual record outlined in the [parties'] Local Rule 56.1 statements." *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (internal quotation marks and alterations omitted); see also *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011). Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. See *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though

courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules").

Consistent with the local rules, Defendants filed Local Rule 56.1(a)(3) Statements of Material Facts with their summary judgment motions. See Doc. 135 (Dr. Zhang's Rule 56.1 Statement) and Doc. 147 (Grote, Shaw, Bass, Markee, Franklin, and Johnson's Rule 56.1 Statement). Each substantive factual assertion in the Local Rule 56.1(a)(3) Statements cites evidentiary material in the record and is supported by the cited material. See N.D. Ill. L.R. 56.1(a). Also consistent with the local rules, Defendants served Plaintiff with Local Rule 56.2 Notices explaining the requirements of Local Rule 56.1 and his need to respond to both the summary judgment motions and Defendants' Rule 56.1 Statements. See Docs. 137 and 148.

Plaintiff responded to both summary judgment motions, and his responses consist of short, numbered paragraphs of facts with citations to affidavits and supporting materials in the record. See Docs. 141, 152; see also Local Rule 56.1(b)(1)(C). His responses, however, do not respond "to each numbered paragraph in the moving party's statement." Local Rule 56.1(b)(3)(B). The Court directed Plaintiff to follow the instructions in the Rule 56.2 Statements to Pro Se Litigants: that is, to respond to each numbered paragraph in Defendants' Rule 56.1 Statement and, if disagreeing with the factual assertion, state how and why he was disagreeing with reference to the record. See Doc. 169 (Order of June 24, 2014). Plaintiff submitted a pleading stating what he believes are undisputed facts; however, the pleading, like his others, does not address each paragraph in Defendants' Rule 56.1 Statements and does not comply with this Court's local rule. See Doc. 171.[2]

[2] The Court notes that Plaintiff filed a "motion to clarify," which attempted to comply with Local Rule 56.1(b)(3)(B)—he listed paragraph numbers in Defendants' Rule 56.1 Statement and stated he was "challenging and denying" them (Doc. 166); however, such blanket denials of Defendants' factual statements do not satisfy Local Rule 56.1(b)(3)(B).

Although none of Plaintiff's pleadings respond to Defendants' Rule 56.1 Statements in accordance with Rule 56.1(b), Defendants did not respond to Plaintiff's statements of material facts, which he presented in accordance with Rule 56.1(a). See Docs. 141, 152. At most, Defendants challenge whether an affidavit submitted by Plaintiff is in the proper form, but they do not address each numbered paragraph in Plaintiff's submissions. See Doc. 163; see also N.D. Ill. Local Rule 56.1(a) ("All material facts set forth in the [opposing party's] statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.")

The Court thus is presented with two sets of factual assertions to which the other party did not respond in accordance with local rules. Accordingly, the Court has considered the factual assertions submitted by both Plaintiff and Defendants, and the facts stated below are taken from the Rule 56.1 statements from all of the parties. Where there are gaps, and there are many, the Court refers directly to the materials submitted by the parties, such as Plaintiff's deposition, medical records, affidavits, grievances, responses to grievances. See *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (a district court has discretion"whether to apply [local rules] strictly or to overlook any transgression") (citing *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)). With the above standards in mind, the Court turns to the facts of this case, noting both where facts are disputed and undeveloped.

## II. Facts

Plaintiff was an inmate at Stateville Correction Center in 2009. During that time, Kenlyn Grote was a nurse at Stateville; Frank Shaw was the prison's warden; Shawn Bass was a grievance officer; Billy Johnson and Johnnie Franklin were members of the Adjustment Committee; and Dr. Liping Zhang was one of Stateville's physicians. Although the motions for summary judgment do not address Officer Markee's role in this case, as he was not served until after the summary judgment motions were filed, it is clear that he was an officer at Stateville during the period of time relevant to this case.

Plaintiff took Celexa for depression and Trazadone to help him sleep, and, according to Plaintiff, Nurse Grote refused to deliver these medications to Plaintiff as ordered. Medications were delivered to inmates by a nurse, who would walk down a row of cells, stop before each one, and hand the medication to the inmate. Plaintiff states that inmates sometimes stayed in their bunks and put out their hands through the bars to retrieve their medications; other times, the nurse would require the inmate to get out of his bunk. According to Plaintiff, sometime in February or March 2009, Nurse Grote came by his cell; he held out his hand from his bunk for his medications; Grote told him to get down; Plaintiff (who was sometimes unable to get out of his bunk because of lingering effects of the Trazadone he took for sleep) told Grote to just give him his medications. She instead walked away without delivering his medications. Following that occurrence, Grote allegedly refused to give Plaintiff his medications through June 2009, and Plaintiff contends that, from March through June 2009, he did not receive medications for four to five days in a row. According to Defendants, Plaintiff's medical records show that Plaintiff received his medications on a daily basis in 2009. Plaintiff agrees that it was written down that he was receiving his medications but insists that he was not getting them.

On June 23, 2009, Nurse Grote handed out medications to Stateville inmates. According to Grote, she went to Plaintiff's cell door to deliver his medications, but he refused to come to the door. Plaintiff told Officer Kirk that Grote again refused to deliver Plaintiff's medications. In accordance with Kirk's instruction, Plaintiff informed a lieutenant nurse, who sent him to the

health care unit. On June 23, 2009, Nurse Grote wrote a disciplinary ticket charging Plaintiff with giving false information about her not delivering his medications.

An Adjustment Committee hearing was held to determine the merits of the disciplinary charge. Officers Markee and Sortino, who were in F-House's tower on June 23, 2009, testified that they saw Grote stop by Plaintiff's cell on June 23, 2009. Plaintiff was given an opportunity to testify at the hearing. Plaintiff also was allowed to, but did not, call any witnesses to testify. Based upon the charge and testimony from Markee and Sortino, the Adjustment Committee (Johnnie Franklin and Billy Johnson) found Plaintiff guilty. He was sentenced to 30 days of commissary restriction.

Plaintiff contends that Franklin and Johnson knew that the disciplinary charge against Plaintiff was false but still found him guilty. In support of his position, Plaintiff presents an affidavit from fellow inmate Max McCoy, who states that B-House (where Plaintiff was housed) cannot be seen from the F-House tower (where Markee and Sortino were). Plaintiff also contends that he has spoken to Officer Markee, who indicated that he never spoke to the Adjustment Committee and that B-House cannot be seen from F-House. According to Plaintiff, who submitted his response before Markee was served, Markee would come forward on Plaintiff's behalf if served with Plaintiff's complaint.

Plaintiff also offers an affidavit from Officer Kirk, which states that, after Plaintiff informed him of Nurse Grote's refusal to deliver his medications, Kirk called Grote on a walkie-talkie and told her to bring Plaintiff his medications. Kirk returned to Plaintiff's gallery sometime later and heard Plaintiff screaming for his medications. Kirk told Plaintiff to report Nurse Grote to the cell house lieutenant. Kirk does not know if Plaintiff was or was not receiving his medications, but rather, only that Plaintiff complained about not receiving his medications.

Grote states in her affidavit that she went to Plaintiff's cell on June 23, 2009, to deliver medications but that Plaintiff refused to come to the door to receive them. Grote, however, does

not state that she delivered medications to Plaintiff or that she went to his cell during the months before June 23. Instead, she states that Plaintiff's medical records indicate that he received his medications daily. Plaintiff's medical records, as best as can be determined by the Court, show that he received his medications daily in 2009. Plaintiff acknowledges that the medical records indicate that he received his medications; however, he contends that Nurse Grote wrote that she was delivering his medications when, in fact, she was not.

Plaintiff submits an affidavit from Inmate Josh Dixon, who was housed in a cell next to Plaintiff's from February to June of 2009. Dixon states that he occasionally saw Nurse Grote walk by Plaintiff's cell, call his name, and then leave. According to Dixon, Grote never went up to Plaintiff's cell, but only passed by it. Plaintiff would then yell out for his medications. Dixon states that this went on for two to three months. Plaintiff further states that he is prepared to call two other witnesses, Sergio Williams (Plaintiff's former cellmate) and William Nealy (Dixon's former cellmate) who would provide testimony similar to Dixon's.

At the end of June 2009, Plaintiff was transferred to F-House, where Nurse Grote was not assigned. According to Plaintiff, he had little to no difficulties receiving his medications after the transfer.

On August 10, 2009, Plaintiff filed a grievance that essentially stated the claims asserted in this case. Specifically, the grievance stated that Nurse Grote refused to deliver medications to Plaintiff for two months; Plaintiff previously filed a grievance in March or April of 2009, which was never ruled on; Plaintiff complained to Officer Kirk on June 22, 2009; Kirk told Plaintiff to report Grote, which Plaintiff did; Plaintiff was then sent to Grote to receive his medications; Grote responded that Plaintiff had refused his medications; Grote then charged Plaintiff for reporting false information; Officers Markee and Sortino testified at the disciplinary hearing that they saw Grote stop in front of Plaintiff's cell, but the officers were working in F-House at the time and could not see B-House where Plaintiff was housed; and both officers lied about Plaintiff refusing his medications. Plaintiff requested as his relief "that the proper disciplinary action [be]

taken against Nurse Kenlyn Grote and c/os Zertino and Margue." The grievance was referred to the medical department. Grievance Officer Shawn Bass consulted Dr. Liping Zhang, who reported that Plaintiff's medical records indicated that he had been receiving his medications on a daily basis. Bass noted in his response to Plaintiff's grievance that Bass had no medical expertise, that he had no authority to contradict Dr. Zhang, and that it appeared that Plaintiff's medical needs had been addressed. Warden Frank Shaw, who is also not a medical professional, concurred with Bass's response to the grievance.

Plaintiff never visited Dr. Zhang for medical treatment, and it appears that her only involvement with Plaintiff's claims was her review of medical records for her response to Plaintiff's grievance submitted on August 10, 2009.

Dr. Zhang's summary judgment materials include copies of all of Plaintiff's grievances. Only one other grievance concerns him not receiving his medications, which was filed on May 7, 2009, and which was reviewed on May 15, 2009, by Officer Butler (not a Defendant). Butler's response to the grievance states that it was referred to the health care department, that Plaintiff was receiving his medications daily, and that there was no nurse named "Kathy," who Plaintiff had accused of not delivering his medications.

## III. Discussion

For the reasons stated below, the Court grants summary judgment for Grievance Officer Bass, former Warden Shaw, Adjustment Committee Members Johnson and Franklin, and Dr. Zhang. Summary judgment is denied for Nurse Grote and Officer Markee, and the claims against these Defendants may proceed.

### A. Nurse Kenlyn Grote

Nurse Grote argues that, contrary to Plaintiff's allegations, his medical records show that he received his medications on a daily basis in 2009, thus negating any claim of deliberate indifference that she intentionally refused to deliver medications.

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To establish such a claim, a plaintiff must demonstrate that (1) his medical condition is "objectively, sufficiently serious," and (2) the defendant acted with a "sufficiently culpable state of mind" with respect to the condition. *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012) (quoting *Farmer*, 511 U.S. at 834). Defendants do not contest that Plaintiff's need for his prescribed antidepressant and sleep medication (Celexa and Trazadone respectively) constitutes a serious medical need, and courts have noted that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001); see also *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983); *Carroll v. Kerrkee,* 2012 WL 2863266 at *2 (S.D. Ill. July 11, 2012). This Court considers Plaintiff's need for his medications to constitute an objectively serious medical condition.

Moreover, an intentional refusal to provide an inmate with prescribed medications can establish deliberate indifference. See *Wynn v. Southward*, 251 F.3d 588, 594 (7th Cir. 2001) (refusal to administer heart medication when requested could establish deliberate indifference); *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999) (deliberate failure to provide pain medication regularly could amount to a constitutional violation); see also *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

The claim against Grote thus depends upon whether the record establishes that she did not deliberately deny Plaintiff his medications. Grote's sole argument on this issue is that Plaintiff received his medications daily in 2009, as evidenced by his medical records. This argument is insufficient to warrant summary judgment.

The Court first notes that there is no explanation of the medical records, such as an affidavit from Grote, Dr. Zhang, or other medical professional, and it is difficult to discern the months in which certain drugs were administered and the initials of the persons who delivered them. The Court further notes a contradiction with Grote saying that Plaintiff received his

medications every day in 2009, but he refused them on June 23, 2009. Lastly, and most importantly, the medical records alone cannot establish that Plaintiff received his medications in this case. Plaintiff contends that Grote wrote down she was delivering medications to Plaintiff daily when, in fact, she was not. In addition to his own deposition testimony, he presents a sworn statement from fellow inmate Josh Dixon who states that he was in a cell next to Plaintiff's from February to mid-June 2009, that he saw Grote stop by Plaintiff's cell but not actually go to it, that Grote would call out Plaintiff's name and then walk away, and that after awhile, Plaintiff began calling out for Grote to give him his medications. Dixon states this went on for two to three months. Plaintiff states further that he is prepared to call two other witnesses, Sergio Williams (Plaintiff's former cellmate) and William Nealy (Dixon's former cellmate), who would provide testimony similar to Dixon's.

The record thus presents a classic he-said-she-said scenario with Defendants stating that Plaintiff received his medications as indicated by his medical records and Plaintiff , as well as multiple witnesses, stating that he did not. Given this disputed issue of material fact, summary judgment is denied on the claim that Grote acted with deliberate indifference by refusing to deliver Plaintiff's medications. *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001) ("summary judgment is a singularly inappropriate time to resolve a 'he said, she said' kind of dispute."). Plaintiff may proceed with his claim that Grote deliberately refused to deliver his medications for several months in 2009.

Defendants do not address Plaintiff's claim that Grote charged him with reporting false information in retaliation for his complaining about her non-delivery of his medications. This claim also presents a he-said-she-said situation as Plaintiff and Grote contend that each other's charge was false. Although Plaintiff does not have the right to falsely accuse an officer, *Gillis v. Pollard*, 554 Fed.Appx. 502, 506 (7th Cir. 2014) (a prisoner does not have a First Amendment right to file frivolous or false charges against an officer) (citation omitted), if his accusations against Grote are true, her charge that Plaintiff falsely accused her could constitute retaliation.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (filing a false charge against an inmate for complaining can establish a First Amendment violation of retaliation); *Walker v. Thompson*, 288 F.3d 1005, 1008-09 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607, 618-19 (7th Cir. 2000); see also *Freeman v. Atchison*, 2014 WL 2866905 at *3 (S.D. Ill. June 24, 2014). Accordingly, Plaintiff's claim that Grote retaliated against him by charging him with a false report may proceed. *See Russell*, 243 F.3d at 340.

**B. Officer Markee**

Officer Markee was not served until March 4, 2014, after the other Defendants filed their motions for summary judgment. Although Markee joined Defendants Grote, Bass, Shaw, Johnson, and Franklin's motion for summary judgment, Markee submitted no additional statements of material facts, no affidavits, nor other evidence addressing Plaintiff's claim that Markee joined Grote's retaliation. Plaintiff was allowed to proceed against Markee based upon the allegations that "when Kenlyn wrote me a ticket for giving false information, she had Officers Zertino (Sortino) and Margue (Markee) lie for her," (Doc. 9, Amended Compl., p.8), and that Grote wrote a disciplinary ticket in retaliation for Plaintiff complaining and "got two Stateville [correctional officers] to lie for her." (Doc. 29, More Def. Statement, p.3). The Court liberally construed the complaint as alleging that Markee and Sortino joined Grote's retaliation.

Plaintiff presents no evidence that Markee knew Grote wrote the disciplinary ticket in retaliation for Plaintiff's complaints. Rather, Plaintiff's contends that he communicated with Markee, who will testify that he never spoke to the Adjustment Committee and that an officer cannot see B-House from the tower in F-House. (Doc. 152 ¶ 16). Plaintiff also presents an affidavit from fellow inmate Max McCoy, who states that B-House cannot be seen from F-House. (Doc. 166, p.7).

Plaintiff's current contentions indicate only that Markee intentionally gave false information about seeing Grote stop in front of Plaintiff's cell, not that Markee retaliated against

Plaintiff. To succeed on a retaliation claim against Markee, Plaintiff must prove both (1) he engaged in constitutionally-protected conduct and (2) such conduct was a substantial or motivating factor behind Markee's adverse action. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Simply providing false information to the Adjustment Committee which resulted in Plaintiff temporarily losing commissary privileges is not itself a constitutional violation. See, *e.g., Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984) (noting that allegations of false disciplinary reports do not state a claim where due process is afforded); *Jobes v. Overall*, 2012 WL 3990553, at *5 (S.D. Ill. Sept. 10, 2012). To support a § 1983 claim, Markee's actions must have been in retaliation for Plaintiff complaining against Grote.

The Court further notes that the information Markee allegedly gave to the Adjustment Committee does not appear to favor either Plaintiff or Defendants. According to the Adjustment Committee's report. Markee only saw Nurse Grote stop by Plaintiff's cell, which could support both Grote's and Plaintiff's version of what occurred on June 23, 2009: Grote contends that she stopped at Plaintiff's cell but he refused to get down from his bunk and receive his medication; Plaintiff contends that Grote stopped by Plaintiff's cell, called out his name in a low voice, then walked away without actually offering him his medications.

Because Markee was not served until after summary judgment motions were filed, the record is insufficient to grant summary judgment at this stage. Even though there appears unlikely that Plaintiff has a claim against Markee, because the record is entirely undeveloped as to Markee's reasons for the information provided to the Adjustment Committee (if he even provided any information at all), Markee has not shown "that there is no genuine dispute as to any material fact" entitling him to summary judgment. Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). Thus, the Court denies Officer Markee's request for summary judgment. If Plaintiff wishes to proceed with a claim against Markee,[3] Plaintiff will be

[3] Based on Plaintiff's summary judgment submissions, it appears as if Plaintiff may actually wish to use Markee as a witness, rather than proceed with a retaliation claim against him. The Court will inquire as to Plaintiff's intentions with respect to Markee at the next status hearing.

allowed to conduct limited discovery to develop the record as to Markee's motives. After discovery, Markee either may move for summary judgment or the Court will entertain a motion for directed verdict, should this matter proceed to trial and Plaintiff's evidence falls short of the mark.

### C. Adjustment Committee Members Billy Johnson and Johnnie Franklin

As to Billy Johnson and Johnnie Franklin, Plaintiff alleges that they joined Grote's retaliation because they knew B-House could not be seen from the F-House tower and that they knew the charge against Plaintiff was false, but that they ruled against Plaintiff because he complained about Grote not delivering his medications. Although Plaintiff was allowed to proceed with his allegations that Johnson and Franklin joined Grote's retaliation,[4] he presents no evidence to support these allegations. "As easy as it is to state a viable claim [for retaliation] at the outset of litigation, an inmate cannot rest on his original allegations as the lawsuit progresses * * * * [T]o establish retaliation, the inmate must show that he has evidence from which a reasonable jury could find that the defendants' knowledge of his protected activity was a substantial or motivating factor in their decision to take an adverse action against him." *Thomas v. Walton*, 461 F. Supp.2d 786, 796 (S.D. Ill. 2006), quoting *Johnson v. Kingston*, 292 F. Supp. 2d 1146, 1152-53 (W.D. Wis. 2003).

The only evidence that Plaintiff presents–his own testimony and a sworn statement from fellow inmate McCoy–would establish that officers in F-House's tower cannot see into B-House. While Officer Markee's testimony before the Adjustment Committee remains as issue, there is no evidence indicating that Adjustment Committee Members Johnson and Franklin knew that

[4] Defendants additionally argue that no procedural due process violations occurred with the disciplinary hearing since Plaintiff spoke at the hearing and could have called witnesses. Plaintiff's claim against Johnson and Franklin is not, however, that his procedural due process rights were violated, but rather, that they joined Grote's retaliation by ruling against him. Plaintiff's only punishment for the disciplinary violation was a 30-day commissary restriction. While such a penalty may support a retaliation claim, it does not trigger due process concerns. *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005).

any of the information provided to them was false, that they were aware of Plaintiff's complaints about Nurse Grote (except for the one that spawned her charge), or that they ruled against Plaintiff with the motive to retaliate against him for complaining about Nurse Grote. Demonstrating that Johnson and Franklin were wrong in their assessment of the information from Markee and Sortino or even with their disciplinary ruling does not establish they had a retaliatory motive. While Plaintiff may not yet have had an opportunity to forward interrogatories or other discovery requests to Markee, Plaintiff could have asked Johnson and Franklin to specify what investigations they did, what communications they had with Markee and Sortino, and whether they had knowledge of Plaintiff's complaints about Grote. He did none of those things.

Plaintiff's unsupported speculation that Johnson and Franklin joined Grote's retaliation are not enough at this stage to proceed. *See Turley v. Rednour*, 555 Fed.Appx. 606, 609 (7th Cir. Feb. 6, 2014) (where a plaintiff "had the opportunity to develop evidence but did not * * * his speculation about [retaliation] would not * * * defeat[ ] summary judgment"), citing *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (explaining that speculation and hunches about defendants' motives cannot defeat summary judgment); *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) (same). Plaintiff's claims against Johnson and Franklin have not progressed beyond the speculation and hunches found in the allegations of his complaint. Thus, the Court will grant summary judgment for Defendants Johnson and Franklin, and the claims against them are dismissed.

### D. Grievance Officer Shawn Bass and Warden Frank Shaw

Plaintiff alleges that Bass and Shaw, as well as Dr. Zhang, failed to investigate Plaintiff's grievance that Grote refused to deliver Plaintiff's medications for a period of time. To the extent that Plaintiff asserts that Bass, Shaw, and Zhang joined Grote's retaliation, like the claims against Johnson and Franklin, such claims are supported by only speculation and hunches, which

are insufficient at this stage of the case. See *Turley,* 555 Fed. Appx. at 609, citing *Springer,* 518 F.3d at 484; *McCoy*, 341 F.3d at 604.

To the extent that Plaintiff contends that Bass, Shaw, and Zhang are liable for not investigating further whether Grote refused to deliver medications to Plaintiff, there is no constitutional right to require that officials investigate or "prosecute persons accused of wrongdoing." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); see also *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("A private citizen lacks a judicially cognizable interest in the prosecution * * * of another."); *Gray v. Taylor*, 714 F.Supp.2d 903, 911 (N.D. Ill. 2010) (an inmate does not have right to demand that an officer be investigated and prosecuted for an alleged wrongdoing). Nor is there a substantive right to a prison grievance system and the denial of or refusal to investigate a grievance, by itself, does not give rise to a constitutional claim. See *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (there is no substantive constitutional right to a prison grievance system, and an official's denial of a prisoner's grievance is not a basis for a § 1983 claim) (collecting cases); see also *George v. Smith,* 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Plaintiff's contention that Bass and Shaw did not fully investigate the grievance about Grote concern her prior denials of medications. Plaintiff's grievance was filed on August 10, 2009, after he had been transferred to another area of the prison where Grote was not assigned and after he was regularly receiving his medications. Bass's and Shaw's alleged refusal to investigate Plaintiff's grievance after the fact does not give rise to a constitutional claim. These Defendants are entitled to summary judgment and the claims against them are dismissed.[5]

---

[5] Only one other grievance, filed on May 7, 2009, concerns Plaintiff not receiving his medications, and it was reviewed on May 15, 2009, by Officer Butler (not a Defendant). Butler's response to the grievance states that it was referred to the health care department, that Plaintiff was receiving his medications daily,

### E. Dr. Liping Zhang

Plaintiff's claim against Dr. Zhang is that she should have conducted a more thorough investigation beyond simply looking at the medical records to determine whether he received his medications. When the Court allowed this claim to proceed, Plaintiff alleged, or the Court believed that Plaintiff alleged, that Dr. Zhang's refusal to investigate Plaintiff's complaint about not receiving medications occurred while he was not receiving them. See Doc. 73 (Order of 12/13/11 denying Dr. Zhang's motion to dismiss). It is now clear that the claims against Dr. Zhang only involve her review of Plaintiff's August 10, 2009, grievance. Although one grievance, and maybe more, about not receiving his medications was submitted at a time when he was not receiving them, there is no indication that Dr. Zhang reviewed the grievance. Even if the grievance was forwarded to the health care unit, there is no indication in the record that Dr. Zhang reviewed any grievance about Plaintiff not receiving his medications until his August 10, 2009 grievance after the fact.

Plaintiff's unsupported speculation that, because Dr. Zhang worked in the medical department, she knew of his prior, is insufficient at this stage of the case to support a § 1983 claim against her. *Turley*, 555 Fed.Appx. at 609, citing *Springer*, 518 F.3d at 484. Plaintiff had an opportunity to develop a record as to whether Dr. Zhang reviewed any grievances about Plaintiff not receiving his medications before his August 2009 grievance. However, the record does not suggest that Dr. Zhang reviewed any grievance other than the grievance of August 10, 2009. Like the claims against Grievance Officer Bass and former Warden Shaw, Plaintiff's claims against Dr. Zhang concern her failure to investigate his complaints after the fact, which do not involve a constitutional violation.

---

and that there was no nurse named "Kathy" (who Plaintiff had accused of not delivering his medications). Plaintiff makes no link between this grievance and Defendants Bass and Shaw, and therefore they cannot be charged with a failure to investigate.

The Court further notes that Plaintiff filed no grievance about Dr. Zhang's failure to better investigate his complaints about not receiving his medications. Plaintiff may have appealed the denial of the August 10, 2009 grievance, which was based upon Dr. Zhang's determination that the medical records indicated that Plaintiff received his medications; however, he never filed a grievance about Dr. Zhang's actions or inactions.

Under 42 U.S.C. § 1997e(a), exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). An inmate must use "all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)" before he files suit. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). The absence of a grievance against Dr. Zhang supports summary judgment for her. Furthermore, given that Plaintiff cannot now exhaust administrative remedies for claims that arose over five years ago, dismissal of claims based on failure to exhaust should be with prejudice. *Fluker v. County of Kankakee*, 741 F.3d 787, 792 (7th Cir. 2013).

The claims against Dr. Zhang are thus dismissed because the record establishes that her failure to investigate concerns only Nurse Grote's actions after the fact, which gives rise to no constitutional claim, and for failure to exhaust.

## IV. Conclusion

For the reasons stated above, the Court grants Dr. Zhang's motion for summary judgment [134], and she is dismissed as a Defendant. The Court grants in part and denies in part the Stateville Defendants' motion for summary judgment [145]. The claims against Grievance Officer Shawn Bass, former Warden Frank Shaw, and Adjustment Committee Members Billy Johnson and Johnnie Franklin are dismissed, and these parties are dismissed as Defendants. The motion is denied for Nurse Kenlyn Grote and Officer C. Markee, and Plaintiff may proceed with his claims against these Defendants. Plaintiff's "motion[s] in response" [141, 152] to the motions for summary judgment are granted to the extent that these pleadings are construed as his

responses to the summary judgment motions. His motions for a ruling on the summary judgment motions and for information as to the status of this case [171, 173, 174] are granted to the extent that this opinion informs him of this case's status. His motion for attorney representation [170] is denied without prejudice at this time; however, the Court will address whether to recruit counsel at the next status hearing, at which the parties should be prepared to discuss discovery issues with the remaining claims and any prospects for settlement between the parties.

Dated: September 15, 2014

______________________________
Robert M. Dow, Jr.
United States District Judge